IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JEROLD THOMAS ELLIS,

    Plaintiff,

    v.                                                                                          1:15-cv-00917-LF

NANCY A. BERRYHILL,[1] Acting Commissioner
of the Social Security Administration,

    Defendant.

## MEMORANDUM ORDER AND OPINION

THIS MATTER comes before the Court on plaintiff Jerold Thomas Ellis's Motion to Reverse and Remand (Doc. 22), which was fully briefed on October 2, 2016. Docs. 25, 26, 27. The parties consented to my entering final judgment in this case. Doc. 12. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") failed to apply the correct legal standards in weighing the opinions of Diane Fligstein, Ph.D. and Cassandra Clark, Ph.D. The Court therefore GRANTS Mr. Ellis's motion and remands this case to the Commissioner for further proceedings consistent with this opinion.

    **I.**    **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill, the new Acting Commissioner of Social Security, is automatically substituted for her predecessor, Acting Commissioner Carolyn W. Colvin, as the defendant in this suit. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.     Background and Procedural History

Mr. Ellis, 52, left school after the eleventh grade to join the United States Marine Corps, but was discharged after 2.5 years for behavioral problems. AR 233, 316. He earned his GED in 1983. AR 47, 262. He worked for many years installing heating and air conditioning units. AR 45, 302, 316. Mr. Ellis filed applications for disability insurance benefits and supplemental security income on March 13, 2012—alleging disability since March 28, 2007 due to major depressive disorder, anxiety disorder, and panic disorder with agoraphobia. AR 233–40, 261. The Social Security Administration ("SSA") denied his claims initially on April 30, 2012. AR

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

132–55.  The SSA denied his claims on reconsideration on July 24, 2012.  AR 191–96.  Mr. Ellis requested a hearing before an ALJ.  AR 199–200.  On July 17, 2013, ALJ Barry O'Melinn held a hearing.  AR 38–75.  ALJ O'Melinn issued his unfavorable decision on February 14, 2014.  AR 18–37.

At step one, the ALJ found that Mr. Ellis had not engaged in substantial, gainful activity since March 28, 2007.  AR 23.[4]  Because Mr. Ellis had not engaged in substantial gainful activity for at least twelve months, the ALJ proceeded to step two.  AR 23–24.  At step two, the ALJ found that Mr. Ellis suffered from the following severe impairments:  major depressive disorder, anxiety disorder, panic disorder with agoraphobia, and left shoulder disorder.  *Id.*  At step three, the ALJ found that none of Mr. Ellis's impairments, alone or in combination, met or medically equaled a Listing.  AR 24–26.  Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Ellis's RFC.  AR 26–30.  The ALJ found that:

> [C]laimant has the residual functional capacity to perform a wide range of unskilled light work as defined in 20 CFR 404.1567(b) and 416.967(b).  Specifically, the claimant can lift and/or carry up to 20 pounds on an occasional basis and 10 pounds on a frequent basis; can sit, stand and/or walk for up to six hours in an eight-hour workday, with normal breaks.  He can occasionally climb ramps or stairs; but can never climb ladders, ropes, or scaffolds; and can reach, including overhead on an occasional basis.  The claimant can understand, remember, and carryout [sic] simple instructions and make commensurate work related decisions; respond appropriately to supervision, coworkers, and work situations; deal with routine changes in a work setting; maintain concentration persistence and pace for up to and including two hours at a time, with normal breaks throughout the workday.  He is limited to work that involves working primarily with things and not people.

AR 26.

At step four, the ALJ concluded that Mr. Ellis was unable to perform any of his past relevant work as a heating, ventilation, and air conditioning installer.  AR 30.  The ALJ found

---

[4] The ALJ found that Mr. Ellis met the insured status of the Social Security Act through June 30, 2007.  AR 23.

4

that Mr. Ellis was not disabled at step five, concluding that he still could perform jobs that exist in significant numbers in the national economy—including an assembler, box labeler, and electronic assembler. AR 31–32.

Mr. Ellis requested review by the Appeals Council, which, on August 11, 2015, denied the request. AR 1–5. Mr. Ellis timely filed his appeal to this Court on October 13, 2015. Doc. 1.

### IV.   Mr. Ellis's Claims

Mr. Ellis raises two arguments for reversing and remanding this case: (1) the ALJ failed to adequately discuss the findings of non-examining state agency psychological consultant Dr. Diane Fligstein, and failed to adopt or reject several moderate mental limitations noted in her opinion; and (2) the ALJ improperly picked and chose from the mental limitations found by the examining psychological evaluator Dr. Cassandra Clark. For the reasons discussed below, the Court agrees, and will remand to the Commissioner for proper evaluation of the medical opinions.

### V.   Analysis

Although an ALJ need not discuss every piece of evidence, he or she is required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Specifically, when assessing a plaintiff's RFC, an ALJ must explain what weight is assigned to each opinion and why. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity" because "the ALJ, not a physician,

5

is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) ("exact correspondence between a medical opinion and the mental RFC is not required").  Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)).  An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Ultimately, an ALJ is required to weigh medical source opinions and to provide "appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5; *see also Keyes-Zachary*, 695 F.3d at 1161 (same) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)).

In *Haga*, the Tenth Circuit held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE") restrictions but rejected others.  482 F.3d at 1208. "[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment.  So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.*  The court remanded the case "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.*  In *Frantz v. Astrue*, 509 F.3d 1299, 1302−03 (10th Cir. 2007), the Tenth Circuit expressly applied *Haga* and its reasoning to the opinions of non-examining physicians.

### A. The ALJ failed to either incorporate, or explain why he rejected, limitations noted in the medical opinion of Dr. Fligstein.

Dr. Diane Fligstein, a non-examining state agency psychologist, evaluated Mr. Ellis's claims on reconsideration.  AR 158–81.  Mr. Ellis argues that the ALJ committed legal error by

6

failing to discuss Dr. Fligstein's findings that Mr. Ellis would "have occasional interruptions from psychological symptoms" and that "he may require assistance or additional time to adjust to change in the workplace before being in line with his peers."[5]  Doc. 22 at 10.  The Commissioner argues that the ALJ's RFC "reasonably accounts" for these limitations.  Doc. 25 at 4.  For the reasons discussed below, the Court finds that the ALJ erred by failing to address these limitations.

Dr. Fligstein found that Mr. Ellis had numerous marked and moderate limitations, of which the following are pertinent to this appeal:

Concentration and persistence limitations:

- Marked limitation in the ability to carry out detailed instructions;
- Moderate limitation in the ability to maintain attention and concentration for extended periods;
- Moderate limitation in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- Moderate limitation in the ability to work in coordination with or in proximity to others without being distracted by them;
- Moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

AR 165–66.  In the narrative for this category of limitations, Dr. Fligstein found that Mr. Ellis could perform "SRTs [short, routine tasks], no complex tasks, for a normal day/week w/ occasional interruptions from psych sx's [psychological symptoms]."  AR 166.

Adaptation limitations:

- Moderate limitation in the ability to respond appropriately to changes in the work setting.

---

[5] In his opening brief, Mr. Ellis also argued that the ALJ failed to discuss Dr. Fligstein's finding that he was limited to "cursory public contact on an infrequent basis."  Doc. 22 at 10.  In his reply, however, Mr. Ellis concedes that the ALJ adequately accounted for this limitation by limiting him to working primarily with things and not people.  Doc. 26 at 2.

AR 166.  In the narrative for this category of limitations, Dr. Fligstein found that Mr. Ellis "may require assistance or additional time to adjust to change in the workplace.  Afterward, he would be in line w/peers."  AR 167.

The ALJ's opinion contains only two cursory references to Dr. Fligstein's opinion, and no discussion of the specific mental limitations she found.  First, the ALJ stated that "the State agency determined that the claimant could perform work which is heavy/to very heavy in exertion, and could meet the mental demands of at least unskilled work with limited contact with others."  AR 29.  Second, the ALJ stated that he gave the opinions of the state agency medical consultants[6] "some weight in that they have determined that the claimant is capable of working. Nonetheless, I concede that the claimant's mental and physical impairments are **more limited** than initially determined, but that he has a mental residual functional capacity compatible with unskilled work at the light exertion level as set forth in my residual finding capacity above."  AR 30 (emphasis added).  The fact that the ALJ found Mr. Ellis more limited than the state agency medical consultants indicates that he found Mr. Ellis at least as limited as Dr. Fligstein.  The ALJ's opinion and RFC, however, do not reflect this greater degree of mental limitation, and the ALJ failed to explain why he did not either adopt or reject the moderate limitations in Dr. Fligstein's opinion.  *See Haga*, 482 F.3d at 1208 (remanding where "the evidence on which the ALJ explicitly relied in his decision does not imply an explanation for rejecting any of [consulting doctor's] restrictions on the mental RFC form, and, in fact, the ALJ never stated that he rejected [the consulting doctor's] opinion").

---

[6] Two state agency medical consultants reviewed Mr. Ellis's claims for disability insurance benefits and supplemental social security:  Dr. Bruce Eather reviewed Mr. Ellis's claims at the initial level, and Dr. Fligstein reviewed his claims on reconsideration.  AR 134–55, 158–81.

The Commissioner concedes that the ALJ did not discuss the specific mental limitations in Dr. Fligstein's opinion, but argues that the ALJ's opinion accounted for all of the limitations. Doc. 25 at 4. The Commissioner argues that the Court is limited to substantial evidence review and cannot "second-guess the ALJ and determine that the ALJ's finding does not account for these limitations." Doc. 25 at 5 (citing *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013)). This, however, is the wrong standard of review. The ALJ's failure to explain why he rejected the limitations in Dr. Fligstein's opinion is legal error. *See Haga*, 482 F.3d at 1207; *see also Clifton*, 79 F.3d at 1009. When an ALJ fails to apply the correct legal standard, the substantial evidence standard of review "do[es] not apply, and such failure constitutes grounds for reversal." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (internal citations omitted). Because of the bar against *post hoc* rationalizations, the only possible salvage for a legally flawed decision is a "harmless error" analysis. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). In reviewing Social Security cases, harmless error only applies if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.*

The Commissioner argues that the ALJ's failure to discuss the specific mental limitations in Dr. Fligstein's opinion is harmless because the ALJ considered the opinion of Dr. Eather, which was essentially identical. Doc. 25 at 4. The Court is not persuaded. As Mr. Ellis points out, the ALJ only considered Dr. Eather's opinion at Step 3, and did not consider the specific mental limitations in the opinions of either Dr. Eather or Dr. Fligstein at Step 4. Doc. 26 at 1. As the ALJ himself admitted, the mental impairment analysis at steps 2 and 3 of the sequential evaluation process cannot substitute for the more detailed mental function assessment required at steps 4 and 5. AR 26; SSR 96-8p, 1996 WL 374184, at *4. In addition, the ALJ's failure to

9

discuss Dr. Fligstein's opinion is not harmless because, as Mr. Ellis points out, the ALJ failed to adequately address Dr. Fligstein's findings that he would "have occasional interruptions from psychological symptoms" and "that he may require assistance or additional time to adjust to change in the workplace before being in line with his peers." Doc. 22 at 10.

First, the ALJ failed to adequately address the limitation in Mr. Ellis's ability to complete a normal workday and workweek without psychologically based interruptions, and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Fligstein found that Mr. Ellis had a moderate limitation in this ability, and stated in her conclusions that Mr. Ellis would have "occasional interruptions from pscyh sx's [psychological symptoms]." AR 166. The ALJ did not point to any evidence contradicting the fact that Mr. Ellis has at least a moderate impairment in this area. However, the ALJ failed to explain why he rejected this limitation.[7] The mental abilities needed for any job include "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Social Security Program Operations Manual System ("POMS") § DI 25020.010, http://policy.ssa.gov/poms.nsf/lnx/0425020010. "These requirements are usually strict." *Id.* Because this ability is a general requirement for all jobs, the ALJ must address this limitation in formulating Mr. Ellis's RFC. *See Bowers v. Astrue*, 271 F. App'x 731, 733–34 (10th Cir. 2008) (unpublished) (noting that a moderate limitation in another ability required for all jobs—the ability to respond appropriately to changes in a routine work setting—could decrease ability to

---

[7] The Commissioner argues that the ALJ's RFC accounts for Mr. Ellis's interruptions from psychological symptoms because the RFC allows him to take normal breaks. Doc. 25 at 4. The Commissioner, however, points to nothing in the ALJ's opinion, and no evidence in the record to support this assertion. "[T]his court may not create or adopt *post hoc* rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga*, 482 F.3d at 1207–08.

perform simple or unskilled work because it is a general work requirement).  The ALJ failed to adequately address this limitation.  Remand is therefore appropriate.  *See Newcomb v. Colvin*, 2017 WL 1101372, at *3–*4 (W.D. Wash. Mar. 24, 2017) (remanding because ALJ's failure to explicitly reject or include a limitation of "occasional interruptions from psychological symptoms" in the RFC was not harmless error).

Second, the ALJ failed to include any limitation concerning Mr. Ellis's ability to adjust to changes in the workplace.  Dr. Fligstein found that Mr. Ellis had a moderate limitation in his ability to respond appropriately to changes in the work setting, and that he "may require assistance or additional time to adjust to change in the workplace.  Afterward, he would be in line w/peers."  AR 166.  The ALJ did not point to any evidence contradicting the fact that Mr. Ellis has at least a moderate impairment in this area and that he needed additional time to adjust to change.  However, the ALJ failed to explain why he rejected this limitation.  The mental abilities needed for any job include "the ability to respond appropriately to changes in (a routine) work setting."  Social Security Program Operations Manual System ("POMS") § DI 25020.010, http://policy.ssa.gov/poms.nsf/lnx/0425020010.  The ALJ found that Mr. Ellis had the RFC to "deal with routine changes in the work setting," but did not address Dr. Fligstein's findings about impairment in this area before coming to this conclusion.  An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Clifton*, 79 F.3d at 1010.  The ALJ's failure to address this basic work function in the RFC requires remand.

### B. The ALJ improperly picked and chose from the mental limitations found by the examining psychological evaluator Dr. Cassandra Clark.

Mr. Ellis argues that the ALJ improperly picked and chose from the limitations noted by examining psychological evaluator Dr. Cassandra Clark.  Doc. 22 at 11.  Specifically, Mr. Ellis

argues that the ALJ gave Dr. Clark's opinion "significant weight" and adopted the limitation Dr. Clark found in his ability to interact socially, while ignoring the limitations Dr. Clark found in his abilities to work without supervision and to keep to a schedule.  *Id*.  The Commissioner counters that Mr. Ellis has failed to show that Dr. Clark's opinion is inconsistent with the RFC. Doc. 25 at 5.  For the reasons discussed below, the Court finds that the ALJ did not adequately address the limitations noted in Dr. Clark's opinion.

Dr. Clark noted that Mr. Ellis was moderately impaired in his "ability to function without supervision" and "would likely require supervision to keep him on task and possibly to remind him of procedures."  AR 410.  The ALJ noted Dr. Clark's finding of a moderate limitation in his ability to function without supervision.  AR 29.  The ALJ's opinion, however, neither explicitly rejects this limitation, nor includes it in Mr. Ellis's RFC.  The Commissioner attempts to gloss over this omission by arguing that "[t]he ALJ found plaintiff could respond appropriately to supervisors and coworkers, and so would be receiving supervision . . . ."  Doc. 25 at 5.  The ability to respond appropriately to supervisors, however, is not the same as the ability to work without supervision.  *See Jaramillo v. Colvin*, 576 F. App'x 870, 875–76 (10th Cir. 2014) (unpublished) (finding the basic mental ability of unskilled work to "respond appropriately to supervision" does not capture a moderate limitation in the ability to work without supervision); *see also* Mental Residual Functional Capacity Assessment form SSA-4734-F4-SUP[8] (listing "the ability to accept instructions and respond appropriately to criticism from supervisors" in the category "Social Interaction," while listing the "ability to sustain an ordinary routine without special supervision" in the category "Sustained Concentration and Persistence"); *Chapo*, 682 F.3d at 1289–90 (dividing mental limitations into "categories of

---

[8] Available at www.ssaconnect.com/tfiles/SSA-4734-F4-SUP.pdf (last visited July 18, 2017).

vocational significance" and finding that a limitation in "ability to accept instructions and respond appropriately to criticism from supervisors" goes in the category of "interaction with supervisors and coworkers" while a limitation in the "ability to sustain an ordinary routine without special supervision" goes in the category of "independent decision making/need for supervision").[9]

Second, Dr. Clark noted that Mr. Ellis was moderately impaired in his "ability to behave appropriately" because he "[h]as difficulty keeping to a schedule." AR 410. While the ALJ reports the fact that Dr. Clark found a moderate impairment in Mr. Ellis's ability to behave appropriately, AR 29, the ALJ makes no mention of his difficulty keeping to a schedule—and the ALJ failed to either reject or incorporate this limitation into Mr. Ellis's RFC. The Commissioner argues that the "RFC accounts for Plaintiff's difficulty with a schedule by limiting [him] to only two hour periods of concentration allowing him to take regular breaks." Doc. 25 at 5. Mr. Ellis asserts that this is a *post hoc* rationalization as neither the ALJ nor the record suggests that his assessed difficulty in keeping to a schedule would be addressed by regular breaks. Doc. 26 at 3. The Court agrees. Allowing Mr. Ellis to take scheduled breaks does not account for limitations in his ability to follow a schedule. *See* MRFCA, SSA-4734-F4-SUP (listing "the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" and "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" as two separate functional capacities); *see also Chapo*, 682 F.3d at 1289–90 (listing the ability to "perform

---

[9] An inability to "do ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work" may show an inability to work at the level of substantial gainful activity. 20 C.F.R. §§ 404.1573(b), 416.973(b).

13

activities within a schedule" and the ability to "perform at a consistent pace without an unreasonable number or length of rest periods" as two separate considerations). The Commissioner improperly conflates these separate considerations.

### VI.   Conclusion

The ALJ erred in failing to incorporate several moderate limitations assessed by Dr. Fligstein and Dr. Clark into Mr. Ellis's RFC without explanation. The Court remands so that the ALJ can explain the evidentiary basis for his RFC determination and his reasons for rejecting portions of the uncontroverted evidence.

**IT IS THEREFORE ORDERED** that plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 22) is GRANTED.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent